IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **ROBBIN AMANDA BAYSE,** a/k/a ROBERT BAYSE, <br><br> *Plaintiff,* <br><br> v. <br><br> **Comm'r GREGORY DOZIER,** *et al.*, <br><br> *Defendants.* | **CIVIL ACTION NO.** <br> **5:18-cv-00049-TES-CHW** |

**ORDER ADOPTING THE UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Law is hard. Of course, it is even more difficult without a formal legal education. More than that, however, when a *pro se* party is proceeding without a legal education while in prison, understanding the complexities and intricacies involving the ever-changing—and very challenging—area of constitutional law can, without doubt, make one frustrated, disheartened, and at times indignant. That is exactly the type of case before the Court today.

What needs to be understood, first and foremost, is that in the Eleventh Circuit, clearly-established rights are those set by precedent of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the law from the highest court of the state where the alleged constitutional violation took place. *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012). As a district court within the Eleventh Circuit, the Court is obligated

to apply the law established by these courts and to render impartial decisions based on constitutional rights clearly established at the time of the alleged violation.

## BACKGROUND

Here, Plaintiff was born biologically male but has been living as a transgender female for the past 27 years. [Doc. 48-3 at p. 41]. In September of 2015, Dr. Cathleen Cleary first diagnosed Plaintiff with gender dysphoria—"a marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months." [*Id.* at p. 18]; *see also* [Doc. 65 at p. 2 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013))]. In short, Plaintiff claims that Defendants from the Georgia Department of Corrections ("GDC") violated the Eighth Amendment when they acted with deliberate indifference to a serious medical need—Plaintiff's gender dysphoria diagnosis—by refusing to provide sexual reassignment surgery ("SRS") as treatment and by only permitting unqualified professionals to treat Plaintiff's disorder. [Doc. 1 at pp. 16–17]; *see also* [Doc. 69 at p. 1 ("There is no dispute . . . that . . . gender dysphoria is a serious medical need.")]; [Doc. 65 at p. 11]. In addition to this claim, Plaintiff also asserts a claim under the Fourteenth Amendment's Equal Protection Clause based upon an allegation that the GDC has a policy prohibiting male-to-female transgender inmates from obtaining vaginoplasty but allowing biologically-born female inmates to undertake a gender confirmation procedure. [*Id.* at pp. 7, 17–19].

After the completion of discovery, Defendants, sued in both their individual and official capacities, moved for summary judgment. Now, before the Court for consideration is the United States Magistrate Judge's Report and Recommendation [Doc. 65] to grant Defendants' Motion for Summary Judgment [Doc. 48]. The Recommendation is clearly is a careful, correct, and comprehensive review of both the record in this case and the applicable law. Shortly after its filing, Plaintiff, in accordance with 28 U.S.C. § 636(b)(1)(C), filed an Objection [Doc. 69].

## DISCUSSION

### A. Standard of Review

When parties submit objections to a magistrate judge's recommendation, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). In doing so, the Court need not consider "[f]rivolous, conclusive, or general objections." *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (per curiam) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)).

### B. Plaintiff's Objection

The Court carefully considered the contents of Plaintiff's Objection; however, based upon the United States Supreme Court's decisions in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), and *Estelle v. Gamble*, 429 U.S. 91, 107 (1976), it finds that Plaintiff's arguments fail to overcome the findings and conclusions recommended by the United

3

States Magistrate Judge. *See* [Doc. 65 at p. 23 (citing *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (disagreement with the opinions of medical professionals does not amount to a constitutional violation))]. Because Plaintiff seems to object to the entirety of the Recommendation, and in order to avoid a reiteration of the United States Magistrate Judge's analysis, the Court only address Plaintiff's concerns related to the current medical treatment in this case. *See Shultz*, 565 F.3d at 1361, *supra*.

The crux of Plaintiff's Objection seems to be that the treating medical professionals in this case do not meet the standards of care as published by the World Association for Transgender Health ("WPATH"), a standard previously found to be authoritative by United States District Court for the Northern District of Florida. *See, e.g.*, [Doc. 69 at p. 2 ("Dr. [Hunsucker] did not follow the 'accepted standards of care' in [Standard Operating Procedure] 507.04.68 . . . .")]; *see also Keohane v. Jones*, 328 F. Supp. 3d. 1288, 1294 (N.D. Fla. 2018). To the extent Plaintiff argues that the WPATH standards *are* the standards to be applied to the evaluation and treatment of transgender inmates, and when not utilized, those inmates are not receiving proper treatment, such argument is misplaced. In fact, GDC Standard Operating Procedure ("SOP") 507.04.68 clearly states that "[c]urrent, accepted standards of care will be used as a reference" to develop treatment plans for patients diagnosed with gender dysphoria. [Doc. 1-3 at pp. 1–2]. While the WPATH standards may be "authoritative" in the Northern District of Florida, the relevant SOP in this case provides that treatment plans for gender dysphoria must be "approved by the

Statewide Medical Director and Statewide Mental Health Director." [*Id.*]; *see also Keohane*, 328 F. Supp. 3d. at 1316.

Crucially, there is nothing in the record indicating exactly what the WPATH standards require and how they differ, if they do, from the treatment plans referenced by the Statewide Medical Director and Statewide Mental Health Director in approving a transgender inmate's treatment plan. Stated differently, the record does not present any admissible evidence, as required by Federal Rule of Civil Procedure 56, to demonstrate *what* specific standards Defendants allegedly fail to meet. Plaintiff merely makes the blanket assertion that Defendants do not follow the desired WPATH standards without pointing to any differentiation between them and the medical standards—whatever they may be—actually applied to Plaintiff's treatment for gender dysphoria.

When discussing the WPATH standards, Plaintiff states that they give "a list of qualifications," but the only qualification Plaintiff could recall was the requirement of a master's degree. [Doc. 48-3 at p. 58]. Admittedly, Plaintiff could not "think of the rest of them," and, unlike the plaintiff in *Keohane*, other than naming the WPATH standards in connection with the discussion in *Keohane*, the specifics of these standards simply cannot be found in the record in this case. 328 F. Supp. 3d. at 1305–07. *See also* [Doc. 69 at p. 3]. Moreover, there is no admissible testimony, affidavit or otherwise, that the GDC has adopted the WPATH standards for treatment or, again, detailing what standards should be applied to Plaintiff's treatment.

5

Essentially, Plaintiff argues that if the treating medical professionals in this case were "qualified to assess or treat . . . gender dysphoria," according to the WPATH standards, then there is a chance SRS could be prescribed as a method of treatment. *See* [Doc. 69 at p. 2]. While it could certainly be argued, as Plaintiff has done—that the evidence shows Plaintiff's treating medical professionals may not have been primarily focused on gender dysphoria—the record is clear in that each doctor was competent to treat the condition. *See* [Doc. 65 at p. 20]. Plaintiff's treating medical professionals have consistently given the same conclusions, making it clear that SRS is not medically necessary to treat Plaintiff's gender dysphoria diagnosis. *See* [*id.* at pp. 18–23]; *see also* [Doc. 48-8 at p. 3 ("Contrary to Inmate Bayse's assertions, I have not made any determination, finding, or formal recommendation that SRS is medically necessary for [Plaintiff's] condition.")]; [Doc. 48-7 at p. 4 ("I am aware that Inmate Bayse has requested SRS, but I have not located any determination, finding, or formal recommendation by a medical or mental health provider that SRS is medically necessary for [Plaintiff's] condition.")]; [Doc. 48-11 at p. 3 ("I have not made any determination, finding, or formal recommendation that SRS is medically necessary for [Plaintiff's] condition.")].

When a claim "turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" *Blanchard v. White Cty. Det. Ctr. Staff*, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991)). The argument that

Defendants are not using the desired standard of care (i.e., presumably the WPATH standards) is an argument for claims sounding in medical negligence, and negligence—even if it rises to the level of medical malpractice—is an insufficient basis on which to attach liability under a claim of deliberate indifference. *Herrick v. Carroll Cty*, No. 1:01–CV–0161–JEC, 2009 WL 3094843, at *5 (N.D. Ga. Sept. 28, 2009) (quoting *Estelle*, 429 U.S. at 106); *see also McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999).

The bedrock of Plaintiff's deliberate indifference claim is that the current treatment plan developed and enacted by the medical professionals in this case is inadequate—a claim based exclusively on a personal disagreement with the opinions of these medical providers. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Such disagreement, as the United States Magistrate Judge previously stated, "does not rise to the level of a constitutional violation." [Doc. 65 at p. 23]. Thus, logic dictates that if Defendants did not violate Plaintiff's constitutional rights, they necessarily could not have violated clearly established precedent as set by the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court. *Terrell*, 688 F.3d at 1255–56, *supra*.

## **CONCLUSION**

In summation, there is nothing in the record, aside from Plaintiff's general disagreement and difference of opinion as to which applicable standard of treatment should be applied, that creates a genuine issue of material fact that the standards utilized in the SOP and the treatment Plaintiff is currently receiving constitute deliberate

indifference to a serious medical need, and thus violate the constitution. *See* Fed. R. Civ. P. 56(a). After a de novo review of the record in this case, including those arguments presented in Plaintiff's Objection regarding allowances for social transitioning, the Court agrees with the United States Magistrate Judge's reasoning and **ADOPTS** the Report and Recommendation [Doc. 65] notwithstanding Plaintiff's arguments. Accordingly, the Report and Recommendation is hereby **MADE ORDER OF THE COURT**, and Defendants' Motion for Summary Judgment [Doc. 48] is **GRANTED**.

**SO ORDERED**, this 20th day of June, 2019.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**